P. BALLANTINE & SONS v. PUBLIC SERVICE CORPORATION OF NEW JERSEY.

Argued February 20, 1908—Decided June 8, 1908.

If a landowner accumulates contaminating matter upon his own land and negligently permits it to percolate through the soil and pollute a neighbor's well, he is liable for the injury.

On rule to show cause.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the plaintiff, *Pitney, Hardin & Skinner.*

For the defendant, *Frank Bergen* and *Richard V. Lindabury.*

The opinion of the court was delivered by

TRENCHARD, J.   This suit is brought by the plaintiff to recover damages for the pollution of its wells.

The plaintiff is engaged in brewing ale and porter, and the defendant in generating gas on adjoining tracts of land in the city of Newark, along the Passaic river.

In the prosecution of its business, the plaintiff uses large quantities of water of a certain degree of purity and temperature for cooling and other purposes. Since 1871 a supply of water for such purposes has been obtained from two wells on its premises, one a dug well and the other an artesian well. The entire output of both wells, about seven thousand eight hundred barrels a day, was required for the uses of the brewery.

The water from these wells was of a uniform temperature and unpolluted until July, 1903, except that for six months or a year prior thereto it had given off a perceptible gaseous odor which, however, did not affect its usefulness for plaintiff's purposes.

Immediately adjoining plaintiff on the north is the gas plant of the defendant, which it leased from its predecessors June 1st, 1903, where it and its predecessors manufactured two kinds of illuminating gas—one, by distillation of bituminous coal which it and its predecessors have manufactured since 1870; the other, by a combination of superheated steam and petroleum oil, which the defendant and its predecessors have been manufacturing since 1887. A by-product of the manufacture of both of these is tar—that resulting from the manufacture of gas from coal being called coal gas tar, and that resulting from the manufacture of gas from petroleum being known as oil gas tar, similar but readily distinguishable substances. The machinery and appliances used by the defendant in the manufacture of gas consist essentially of retorts, storage tanks for the crude oil, cylindrical holders for the gas, and tanks for the storage of gas tar pending use or sale.

The defendant produces on its premises about two thousand gallons of gas tar a day.

There is no other gas works within four miles of the plaintiff, except another plant of the defendant one mile distant.

On July 23d, 1903, the water in the plaintiff's wells suddenly became polluted with oil gas tar in large quantities which rendered it useless to the plaintiff.

By reason of such pollution of its wells, the plaintiff expended large sums of money in procuring another supply of water, and to recover for such expenditures brought this suit in the Supreme Court.

Upon trial at the Essex Circuit the jury rendered a verdict for the plaintiff for $20,725.

The only reasons requiring consideration urged by the defendant why a new trial should be granted are—*first,* that the trial judge refused to direct a verdict for the defendant; *second,* that the verdict is against the clear weight of the evidence, and *third,* that the verdict is excessive.

We think the case was properly submitted to the jury.

It is the established law of this state that, if a landowner accumulates contaminating matter upon his own land and negligently permits it to percolate through the soil and pollute a neighbor's well, he is liable for the injury. *Marshall* v. *Welwood,* 9 *Vroom* 339; *Righter* v. *Jersey City Water Supply Co.,* 44 *Id.* 298.

Such was the rule adopted by the learned trial judge. In his charge to the jury he plainly rested the plaintiff's right to recover upon proof of negligence upon the part of the defendant in allowing tar to escape from its premises to the plaintiff's wells.

There was evidence justifying the jury in finding that the tar found in the plaintiff's wells came from the adjoining gas works of the defendant after June 1st, 1903. The fact that the gas plant had been operated for thirty years without injury to the plaintiff tended to show that with proper care no injury would have occurred. The sudden appearance of oil gas tar in the plaintiff's wells in July, 1903, warranted the inference that a leak had occurred, subsequent to June 1st, 1903, in some of the receptacles in which the defendant stored its tar-bearing substances. It was not incumbent upon the plaintiff to show by proof in just what receptacle the leak occurred. These receptacles were all in the possession and under the control of the defendant and within its peculiar knowledge. There were other circumstances that

spoke of negligence—the iron pipes that conducted the tar to the storage tanks were laid underground where they were liable to corrosion, but were not subject to inspection. After the pollution they were examined and some of them were renewed. Three of the five receptacles for tar were upon made ground and were built of concrete underground, and so not readily subject to inspection. After the pollution these tanks were examined and two of them were lined with steel. An old gas holder, built in 1870, whose pit was designed only to hold water, has in later years been used as a relief holder for the storage of gas impregnated with oil gas tar, which, being heavier than water, would settle to the bottom. No examination was made of the bottom of this relief holder to ascertain whether it was impervious, either at the time of its changed use or after the pollution of the plaintiff's wells was brought to the defendant's attention.

From such proof negligence may be inferred. *Hinmon* v. *Somers Brick Co.,* 46 *Vroom* 869; *Newark Electric Co.* v. *Ruddy,* 33 *Id.* 505; *affirmed,* 34 *Id.* 357; *Bahr* v. *Lombard, Ayres & Co.,* 24 *Id.* 233.

Under these circumstances the case was properly submitted to the jury.

The defendant put before the jury by the testimony of experts and other witnesses the theory that the tar found in the plaintiff's wells came from the Passaic river, where, prior to 1887, coal gas tar was deposited by the predecessors of the defendant, and was drawn or flowed there between the strata of rock which dip from the river towards the wells. But this was all theory and seems to be inconsistent with what we understand the proof shows to have been the fact that the tar in plaintiff's wells was oil gas tar.

It is, perhaps, nevertheless true that there was evidence which would have justified the jury in adopting this theory and thus have found for the defendant, but it is equally true that there was evidence plainly justifying them in adopting the theory of the plaintiff that the tar was negligently permitted to escape from some one or more of the tanks or ap-

pliances of the defendant through the intervening soil into the plaintiff's wells.

The jury, after considering all of the evidence, have found for the plaintiff, and we are not inclined to disturb the verdict. It is not so clearly against the weight of the evidence, if at all, as to justify us in so doing.

Nor do we think the verdict is excessive. It appears to be based upon testimony with respect to reasonable expenditures that the plaintiff incurred prudently and in good faith in endeavoring to remedy the injury, and was confined to compensation for such expenditures as were made from July 23d, 1903, the date when the injury complained of began, to August 23d, 1906, the date when this action was begun.

We cannot say that, under the proof, this verdict shows any indication of mistake, prejudice or partiality upon the part of the jury.

The rule to show cause is discharged, with costs.